UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TRACEY CUOZZO,


                                          Plaintiff,

                                                              DECISION AND ORDER

                                                              12-CV-6215L


                              v.

AMERICAN ROCK SALT COMPANY,
JOSEPH BUCCI, Individually,


                                          Defendants.

_____


                              **INTRODUCTION**

        Plaintiff Tracey Cuozzo brought this action against American Rock Salt Co., LLC ("ARS")

and Joseph Bucci, alleging claims of sex discrimination and unlawful retaliation under Title VII of

the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and a claim for sexual

harassment under the New York Human Rights Law ("HRL"), N.Y. Exec. Law §§ 290 *et seq.*

        On June 28, 2013, defendants moved for summary judgment (Dkt. #20).  Plaintiff was given

until August 9, 2013 to respond, Dkt. #21, and on the request of her then-attorney, Christina Agola,

she was granted an extension to respond until November 7, 2013.  Dkt. #22.

        After defendants' motion was filed, attorney Agola requested, and was granted, permission

to withdraw from all her pending cases in this Court, including this one, because she had been

suspended from practice in this District.  *See* Dkt. #23.  At that point–which was two weeks after the

deadline to respond to defendants' summary judgment motion–plaintiff had not filed any response to the motion, through her attorney or otherwise.

On January 3, 2014, the Court issued an Order (Dkt. #24) noting that plaintiff had not responded to the pending motion, and giving her thirty days to do so, either *pro se* or through new counsel. The Court stated that if plaintiff failed to respond to the motion, the Court would "consider the motion on the papers submitted, which could result in the action being dismissed." *Id.* Plaintiff has not responded to the motion or to that order, nor has she communicated with the Court in any way since her attorney withdrew.

## FACTUAL BACKGROUND

Plaintiff alleges that she began working for ARS in September 2010 as a benefits specialist. Complaint ¶ 15.[1] Bucci is a part owner of ARS. Def. Rule 56.1 Statement of Facts ("SOF"), Dkt. #20-1 ¶ 2. Prior to her employment at ARS, plaintiff had worked with Bucci for several years in an unrelated business. Complaint ¶ 17. Before the incidents giving rise to this action began, plaintiff had considered Bucci a friend. SOF ¶¶ 18, 19.

According to defendants, during plaintiff's employment at ARS, she and Bucci had frequent work-related interactions, and occasionally engaged in small talk, but Bucci did not directly supervise her. SOF ¶ 29. Plaintiff's immediate supervisor was Gary Perrin, who was also ARS's Director of Human Resources. SOF ¶ 25.

---

[1]References to the complaint are to the Amended Complaint (Dkt. #2).

Plaintiff alleges that beginning in late August 2011, Bucci began discussing with her certain anonymous letters that he said had been sent to his home and to his neighbors, concerning an alleged sexual relationship between Bucci and another woman. Defendants contend that these letters were utterly false, and that Bucci expressed his intent to "get to the bottom" of the matter. SOF ¶ 37.

According to defendants, Bucci hired a former law enforcement officer to investigate the source of the letters. Based on information uncovered by that person, Bucci came to believe that plaintiff had either sent the letters, or knew who had sent them. SOF ¶ 41.

In early October 2011, Bucci confronted plaintiff in her office over the matter. She denied any involvement or knowledge of where the letters had come from. After some words were exchanged, Bucci returned to his office. A few minutes later, plaintiff left, telling a coworker, in sum and substance, that she was not going to put up with further harassment and that she was going home. Complaint ¶ 30; SOF ¶ 44.

Later that day, plaintiff telephoned Perrin. She told him what had happened between her and Bucci. Plaintiff stated that the situation had been going on for several weeks but that she had not previously brought it to Perrin's attention because it had nothing to do with ARS. SOF ¶ 45.

Perrin told plaintiff that he needed her to return to work, but she refused, stating that she would not return until Bucci apologized to her. SOF ¶ 46.

Perrin continued to communicate, or attempt to communicate with plaintiff over the ensuing weeks, but, in short, she never returned to work.

Within days after the incident with Bucci, however, plaintiff retained Agola as her attorney. Apparently acting on Agola's advice, plaintiff sent a letter to Perrin stating that she believed she had

been "subject to a hostile environment based on sex that ha[d] made [her] workplace increasingly intolerable." SOF ¶ 57. Although Perrin made further attempts to contact plaintiff about the matter, she deliberately failed to respond to him, because she had been "told [presumably by her attorney] not to at that point communicate" with him. SOF Ex. 2 at 126.

Plaintiff did send Perrin an email on October 11, 2011, suggesting that they arrange to meet "after [plaintiff's] medical leave." SOF Ex. 13. Perrin responded that he knew nothing about plaintiff ever asking for or being granted medical leave.

Plaintiff then sent Perrin statements from her doctor and from a psychiatrist opining that she needed time off from work. Although plaintiff never returned the paperwork that Perrin sent her in connection with leave under the Family and Medical Leave Act ("FMLA"), Perrin treated her absence as FMLA leave and kept her position open. SOF ¶ 69.

On October 13, 2011, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), reciting her version of the events with Bucci, and alleging that she had been subjected to a hostile work environment based on her sex. SOF Ex. 15.

In late 2011, Perrin sent plaintiff a letter advising her that her FMLA leave period was about to expire. She did not respond directly to that letter, but in March 2012, plaintiff sent ARS a letter stating that she was "constructively discharg[ing] herself" because of the "intolerable work conditions created by Joseph Bucci ... ." SOF Ex. 18.

The same day that plaintiff sent this letter, she filed a second EEOC charge, alleging that since filing the first charge, she had been "subject to a pattern of retaliation by Bucci ... ." SOF Ex. 20. (Defendants state, however, that Bucci never had any direct contact with plaintiff following his

October 4, 2011 conversation with her in plaintiff's office.  SOF ¶ 67.)  Plaintiff then filed this

lawsuit in April 2012.

### DISCUSSION

**I. Plaintiff's Failure to Respond to Defendants' Motion**

Rule 56(e) of the Federal Rules of Civil Procedure provides that if the non-movant fails to

respond to a summary judgment motion by setting forth "specific facts showing that there is a

genuine issue for trial," then "summary judgment, if appropriate, shall be entered against the adverse

party."  Local Rule 56 also provides that all material facts set forth in the movant's statement of

material facts "will be deemed admitted unless controverted by the statement required to be served

by the opposing party."  Local Rule 7.1(e) mandates that the party opposing a summary judgment

motion file an answering memorandum and supporting affidavit, and further states that "[f]ailure to

comply ... may constitute grounds for resolving the motion against the non-complying party."

As stated, the Court has given plaintiff explicit notice of the consequences of failing to

respond to defendants' motion.  Since she has not responded, the Court may assume the truth of

defendants' factual assertions, and proceed to determine whether, based upon those facts, summary

judgment for defendants is warranted.  *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *see*,

*e.g.*, *Morrison v. Dr. Pepper Snapple Group*, 916 F.Supp.2d 372, 373-74 (W.D.N.Y. 2013).

## II. The Merits of Plaintiff's Claims

Plaintiff's claims must be dismissed, for a host of reasons.  First, her allegations do not support her claims of sex discrimination.  The incident that led to her alleged constructive discharge arose from Bucci's accusation that plaintiff knew something about the anonymous letters that he and his neighbors had been receiving accusing him of having an extramarital affair.  There is no basis in the record to think that plaintiff's gender was a direct factor in that regard.

The complaint alleges that plaintiff was uncomfortable with Bucci's ongoing discussions with her about the "puerile details of his illicit affair," Complaint ¶ 21, but the record shows that the basis for plaintiff's claim of constructive discharge was his accusation that she was either responsible for, or knew something about, the letters that he and his neighbors had been receiving about that matter.  According to plaintiff's own testimony, it was not the sexual nature of the subject matter, but the implication that she "had something to do with it" that she found objectionable.  SOF Ex. 2 at 175.

Leaving aside plaintiff's testimony in that regard, arguably, as a woman, plaintiff may have felt particularly uncomfortable discussing any sexual matters–true or untrue–with a man.  But at her deposition, plaintiff testified that only "one time" did Bucci tell her what was in the letters.  SOF Ex. 2 at 170.[2]  She also testified that, contrary to what is alleged in the complaint, Bucci did not discuss

---

[2]Plaintiff also disavowed agreement with, or even understanding of, some of what was alleged in her complaint in this regard.  She testified at her deposition that she did not "even know what that means," regarding the allegation about the "puerile details" of Bucci's alleged affair.  She also agreed that, contrary to what is alleged in the complaint, Bucci did not engage in "lurid [descriptions of] sexual escapades with other women on a daily basis"; rather, he *denied* any sexual misconduct, and there was only "[o]ne time [when] he said what was in the letter" accusing him of having an affair.  SOF Ex. 2 at 170, 178, 185.

with her the "details of [his] illicit sexual affair," Complaint ¶ 20. In fact, he disavowed ever having

had any such affair, and plaintiff testified that her "counsel wrote that [about Bucci's affair] in

there." SOF Ex. 2 at 173-74.

Thus, there is no basis here for a sex discrimination claim. At worst, this was a dispute

between Bucci and plaintiff that had nothing to do with her gender.

But there are still more reasons why the complaint must be dismissed. First, the allegations

do not support a claim of constructive discharge. To establish a constructive discharge, plaintiff

must show that her employer deliberately made her working conditions so intolerable that she was

forced to resign. *Cooper v. John D. Brush & Co.*, 242 F.Supp.2d 261, 272 (W.D.N.Y. 2003) (citing

*Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000).

This burden is not an easy one to carry. A "claim of constructive discharge must be

dismissed as a matter of law unless the evidence is sufficient to permit a rational trier of fact to infer

that the employer deliberately created working conditions that were 'so difficult or unpleasant that

a reasonable person in the employee's shoes would have felt compelled to resign.'" *Stetson v.*

*NYNEX Service Co.*, 995 F.3d 355, 361 (2d Cir. 1993) (quoting *Pena v. Brattleboro Retreat*, 702

F.2d 322, 325 (2d Cir. 1983)).

The case at bar, according to plaintiff's own testimony and actions, boils down to a one-time

confrontation between her and Bucci. There may have been some conversations between the two

of them leading up to this incident, but it is clear from her testimony that those conversations were

nothing more than background; it was only when Bucci directly accused her of having some

involvement with, or knowledge of the letters that she decided to leave.

That is not to say that a plaintiff cannot succeed on a constructive discharge claim, based on an allegation that some particular incident amounted to the proverbial straw that broke the camel's back. But that is not what the evidence shows here. Up until their final confrontation, Bucci and plaintiff may have had some conversations that made plaintiff uncomfortable, but there is no evidence from which a factfinder could find the kind of "severe or pervasive" harassment sufficient "to alter the conditions of [plaintiff's] employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

With respect to her claim against ARS, plaintiff quite clearly not only failed to utilize ARS's dispute procedure, she deliberately *avoided* using it. An employee who simply fails to avail herself of an employer's grievance procedures will be deemed to have acted unreasonably unless the employee "come[s] forward with one or more reasons why the employee did not make use of the procedures." *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 246 (2d Cir. 2001); *accord Brewster v. City of Poughkeepsie*, 447 F.Supp.2d 342, 354 (S.D.N.Y. 2006); *Payano v. Fordham Tremont CMHC*, 287 F.Supp.2d 470, 475 (S.D.N.Y. 2003).

Plaintiff has shown no good reason why she did not take advantage of ARS's dispute-resolution procedures, other than the ill-advised recommendation of her then-attorney that she not speak to Perrin. ARS has thus shown (1) "that the employer exercised reasonable care to prevent and correct promptly" any discriminatory behavior, and (2) "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).[3]

---

[3]Apparently, it was also at her then-attorney's suggestion that plaintiff decided to

(continued...)

Plaintiff's claim of retaliation is patently meritless as well.  She alleged in her second EEOC charge (which asserted her retaliation claim) that after she filed her first EEOC charge, she was "subject to a pattern of retaliation by Bucci ... ."  SOF Ex. 20.  There is no evidence, however, that Bucci had any contact with plaintiff following his confrontation with her on October 4, 2011, which was nine days *prior* to the filing of plaintiff's first EEOC charge.

Plaintiff has also alleged that she was "snubbed" by some coworkers, and that an assistant of Bucci took a photograph of her at a public event, after she filed her EEOC charge.  SOF ¶ 88.  Such acts do not rise to the level of severity that is required to make out a retaliation claim, and in any event by the time that they occurred, plaintiff had already stopped reporting to work at ARS.  *See Douglass v. Rochester City Sch. Dist.*, 522 Fed.Appx. 5, 8 (2d Cir. 2013) (retaliatory action must be "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination") (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Harper v. Brooklyn Children's Center*, No. 12-CV-4545, 2014 WL 1154056, at *3 (E.D.N.Y. Mar. 20, 2014) ("[p]ersonality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable") (citation omitted).

---

[3](...continued)
"constructively discharge [her]self."  Plaintiff stated that it was her understanding that a constructive discharge "was almost like a firing, but me doing it," and that she was told, "[W]e're going to constructively discharge you from there," *i.e.*, from ARS.  SOF Ex. 2 at 157.

While this does not affect the Court's decision in this case, I note that the actions of plaintiff's former attorney are part of a pattern of behavior on her part that has been well documented both in this Court an in the Court of Appeals, which ultimately is what led to her suspension from practice.  *See In re Agola*, 484 Fed.Appx. 594 (2d Cir. 2012).

The complaint's allegations that plaintiff has been "maligned" and "the subject of inappropriate rumors" also fail to support a retaliation claim.  Plaintiff (who stated that she "d[id]n't even know what maligned means," SOF Ex. 2 at 184), stated at her deposition that she heard, second-hand, that there was a story circulating among her former coworkers that she had gone on disability leave because she had broken her leg in the parking lot at work.  SOF Ex. 2 at 182.  That story may have been untrue, but it could hardly be characterized as an "inappropriate rumor," and in any event there is no evidence from which it can be attributed to defendants.

In short, there is no basis for either of plaintiff's Title VII claims here.  Since the relevant standards are the same as to both the Title VII and HRL discrimination claims, the Court grants summary judgment in favor of defendants on the HRL claim as well.  *See Durant v. New York City Housing Auth.*, No. 12-CV-937, 2013 WL 1232501, at *11 (E.D.N.Y. Mar. 4, 2013); *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359, 393 (S.D.N.Y. 2013).  Although the HRL claim is captioned a claim for "sexual harassment" rather than discrimination, it is based on the same set of facts and fails for the same reasons as plaintiff's Title VII claims.

**CONCLUSION**

Defendants' motion for summary judgment (Dkt. #20) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       March 28, 2014.